IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRIS COUNTY, TEXAS, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of United States Department of Health and Human Services, et al.,<br><br>  Defendants. | Civil Action No. 1:25-cv-01275 |

**DECLARATION OF JAMIE LEGIER**

Pursuant to 28 U.S.C. § 1746, I, Jamie Legier, declare as follows:

1. I am the Director of the Office of Grants Services at the Centers for Disease Control and Prevention (CDC), the United States Department of Health and Human Services ("HHS").

2. In that capacity, my official duties include providing fiscal stewardship across the agency, and I serve as the agency's principal advisor and liaison on all aspects of grants, including grants financial management activities.

3. I have experience with HHS's record systems regarding grant

1

awards issued by CDC, a sub-agency of HHS. These records are made in the course of regularly conducted business activity at or near the time of relevant events by a person with knowledge of these events.

4. In the course of preparing this declaration, I have examined the office records available to me regarding grants awarded by CDC.

5. At issue in this litigation are grants provided by CDC to prevent, prepare for, and mitigate against COVID-19. These grants were issued in the midst of the COVID-19 pandemic, utilizing supplemental funds appropriated through a number of appropriations acts passed by Congress in response to the COVID-19 pandemic.

6. Grants issued by CDC are to entities considered "prime recipients" or primary awardees with whom the agency has a legal relationship. If a prime recipient provides an award (either a subaward or a contract) to another third party, that entity is considered a subrecipient to CDC. CDC does not have a legal relationship with a subrecipient and often will not have pertinent records associated with the relationship between the prime recipient and the subrecipient.

7. In response to the COVID-19 public health emergency, CDC, either directly or by and through HHS, received supplemental funding from the following appropriations bills:

- The Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020, Pub. L. No. 116-123, 134 Stat. 146 (2020) ("CPRSA");
- The Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) ("CARES");

- The Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620 (2020) ("PPP");
- The Coronavirus Response and Relief Supplemental Appropriations Act, (2021) Pub. L. No. 116-260, 134 Stat. 1182 ("CRRSAA"); and
- The American Rescue Plan Act of 2021 ("ARPA") Pub. L. No. 117-2, 135 Stat. 4 (2021) ("ARPA").

8.     With respect to the CDC/HHS, some of these bills specify, with varied wording, a minimum amount of funding to be provided to state, tribal, local, and territorial entities, commonly referred to by HHS as "STLTs" and the date by which the funding must be made available or obligated by CDC/HHS.

9.     I am aware in my role at CDC that both HHS and CDC track each of the appropriated funding streams and the expenditure of those funds to each grant recipient.

10.    I prepared this declaration in response to the Court's Minute Order in this case, dated May 21, 2025.  The Minute Order states:

> In their opposition to [14] Plaintiffs' Motion for a Preliminary Injunction, Defendants argued that they complied with the appropriations bills at issue in this case by "obligating" the appropriated funds through grants to state and local governments. See ECF [21] at 27-28. At argument, government counsel indicated his belief that the government has not just obligated those funds but has in fact "paid out the minimum amounts appropriated by Congress." In light of that representation, the Court orders Defendants to file by May 23, 2025, a declaration (1) confirming the accuracy of counsel's belief, and (2) providing the government's best estimate of how much grant money it paid out under the relevant funding provisions prior to its March 24, 2025 announcement that it would terminate the grants at issue in this case.

11.    In response to the Court's Order, I have attached a chart to this declaration at Exhibit 1, which I explain further below.  The chart shows the following, for each of the five appropriations statutes listed above.

3

- Column (1): the total amount appropriated to CDC/HHS through the appropriations bill, and the date by which it must be obligated;

- Column (2): the amount that the bill designated for STLTs;

- Column (3): the amount CDC/HHS had obligated / awarded[1] to STLTs prior to the March 24, 2025 announcement that it would terminate the grants at issue in this case;

- Column (4): the government's best estimate of the amount of money CDC/HHS had "paid out" to STLTs prior to the March 24, 2025 announcement that it would terminate the grants at issue in this case;

- Column (5): the government's best estimate of the amount of money CDC/HHS has "paid out" to STLTs through the present (May 22, 2025).

12. For the CPRSAA, Congress appropriated $2.2 billion to CDC, of which $950,000,000 was specifically appropriated for awards to STLTs, to remain available until September 30, 2022. Prior to the March 24, 2025 announcement that it would terminate the grants at issue in this case, CDC had awarded STLTs $1,120,474,306, and had "paid out" $1,098,488,564. Therefore, Defendants' counsel's belief (as reflected in the Minute Order) was correct for the CPRSAA—the $1,098,488,564 "paid out" to STLTs exceeds the $950,000,000 minimum appropriated by Congress for STLTs.

13. With respect to these CPRSAA funds, CDC made awards to states, and states could allow funds to flow down through a subaward or a contract to another third party at their discretion. No CPRSAA dollars were obligated by CDC/HHS directly to the four local government plaintiffs in this case (Harris County, Texas; Columbus, Ohio; Nashville and Davidson County, Tennessee; and

---

[1] For all intents and purposes of this declaration, "awarded" and "obligated" meant the same here.

4

Kansas City, Missouri) (the "Local Government Plaintiffs").

14. To the extent that other grants are funded by CPRSA—either indirect grants to the Local Government Plaintiffs, or grants to other (unidentified) state or local governments potentially implicated in this case through Plaintiff American Federal of State, County and Municipal Employees, AFL-CIO ("AFSCME")—CDC "paid out" more than the minimum amount that Congress designated for STLTs in CPRSA.

15. For the CARES Act, Congress appropriated $4.3 billion to CDC, of which $1.5 billion was specifically appropriated for awards to STLTs, to remain available until September 30, 2024. As reflected on Exhibit 1, prior to the March 24, 2025 announcement that it would terminate the grants at issue in this case, CDC and HHS together had awarded a combined amount to STLTs of $2,202,778,346, and had "paid out" $1,836,990,320. Therefore, Defendants' counsel's belief (as reflected in the Minute Order) was correct for CARES—the $1,836,990,320 "paid out" to STLTs exceeded the $1,500,000,000 minimum appropriated by Congress for STLTs.

16. Two of the four Local Government Plaintiffs received funds under the CARES appropriation. With respect to grants funded by CARES—including these two direct grants and any indirect grants to the Local Government Plaintiffs, or grants to other (unidentified) state or local governments potentially implicated in this case through AFSCME—CDC and HHS "paid out" more than the minimum amount that Congress designated for STLTs through CARES.

5

17. For the PPP, Congress appropriated $11,000,000,000 to HHS for STLTs in total, without specifying that the appropriation go through CDC. Of this appropriation, Congress specified that $750,000,000 be appropriated for the Indian Health Service, resulting in $10,250,000,000 billion appropriated for non-Indian Health Service STLTs.

18. The Fiscal Responsibility Act of 2023, PL 118-5 ("FRA"), rescinded "unobligated" balances of funds provided under the PPP, as of its date of enactment, June 3, 2023. However, the $10,250,000,000 for non-Indian Health Service STLTs was fully "obligated" as of June 3, 2023, and therefore, the FRA did not rescind or impact the $10,250,000,000 appropriated under PPP.

19. As reflected on Exhibit 1, prior to the March 24, 2025 announcement that it would terminate the grants at issue in this case, CDC and HHS together had awarded a combined amount to the STLTs of $10,532,317,052, and had "paid out" $8,896,501,323. (The combined amount paid out through present is $9,009,982,862.) Therefore, Defendants' counsel's belief (as reflected in the Minute Order) was incorrect for PPP—the amount "paid out" to the STLTs, prior to March 24, 2025, did not exceed the minimum amount appropriated by Congress for STLTs.

20. With respect to PPP funds, CDC and HHS made awards to states, and states could allow funds to flow down through a subaward or a contract to another third party at their discretion. No PPP dollars were obligated directly by CDC or HHS to the four Local Government Plaintiffs.

6

21. For the CRRSAA, Congress appropriated $8.75 billion to CDC, of which $4.29 billion was specifically appropriated for awards to STLTs, to remain available until September 30, 2024. The CRRSAA appropriated a total of $4.5 billion to STLTs, specifying $210 million for the Indian Health Service, which is not part of this case. 134 Stat. at 1911. Under CRRSAA, in addition to the CDC-specific allocation, Congress appropriated $22.4 billion to HHS, to remain available until September 30, 2022, and directed that money go to the STLTs within 21 days of the date of enactment of the Act. HHS provided that money to CDC to obligate.

22. The FRA (referred to above) rescinded "unobligated" balances of funds provided under the CRRSAA, as of its date of enactment, June 3, 2023. However, because the relevant amounts were fully "obligated" as of June 3, 2023, the FRA did not rescind or impact the amount designated by Congress to STLTs under CRRSAA.

23. As reflected on Exhibit 1, prior to the March 24, 2025 announcement that it would terminate the grants at issue in this case, CDC and HHS together had awarded a combined amount to the STLTs of $26,753,559,334, and had "paid out" $17,600,806,543. (The combined amount paid out through present is $18,253,721,855). Therefore, Defendants' counsel's belief (as reflected in the Minute Order) was incorrect for CRRSAA—the amount "paid out" to STLTs prior to March 24, 2025 did not exceed the minimum amount appropriated to STLTs by Congress.

7

24. Two of the four Local Government Plaintiffs received funds from CDC and HHS under the CRRSAA appropriation.

25. For the ARPA, Congress appropriated $1 billion to CDC. CDC received another $17,964,597,077 from HHS under ARPA. In ARPA, Congress did not designate any minimum amount for STLTs. Because Congress did not designate any minimum amount for STLTs under ARPA, Defendants' counsels' belief (as reflected in the Minute Order) was correct for ARPA.

26. With respect to ARPA funds, CDC made awards to states, and states could allow funds to flow down through a subaward or a contract to another third party at their discretion. No ARPA dollars were obligated directly by CDC or HHS to the four Local Government Plaintiffs.

I HEREBY DECLARE TO THE BEST OF MY KNOWLEDGE AND BELIEF, UNDER PENALTY OF PERJURY, that the foregoing is true and correct.

EXECUTED this May 23, 2025.

*/S/ Jamie Legier*
/s/ Jamie Legier