**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HARRIS COUNTY, TEXAS**, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**ROBERT F. KENNEDY, JR.**, in his official capacity as Secretary of Health and Human Services, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-01275-CRC |

**PLAINTIFF AFSCME'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL RECONSIDERATION**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 2

A. Procedural Background ........ 2

B. The Court's Memorandum Opinion and Order ........ 4

STANDARD OF REVIEW ........ 6

ARGUMENT ........ 6

A. This Court Should Reconsider its Memorandum Opinion Because of Its Clear Error ........ 7

B. Absent Reconsideration, Manifest Injustice Will Result to AFSCME's Members, Who the Court Determined Will Suffer Irreparable Harm ........ 10

CONCLUSION ........ 12

## INTRODUCTION

Plaintiff American Federation of State, County, and Municipal Employees ("AFSCME") respectfully seeks narrow and limited reconsideration of that portion of the Court's June 17, 2025, Order, ECF No. 32, and Memorandum Opinion, ECF No. 33 ("Mem. Op."), that declined to award Plaintiff AFSCME injunctive relief on behalf of its members who are public employees in two jurisdictions: the State of Alaska ("Alaska") and Jackson County, Ohio ("Jackson County"). AFSCME members in those jurisdictions were terminated from their employment in public health departments as a result of actions which the Court's Memorandum Opinion found were likely unlawful and caused these AFSCME members irreparable harm. Reconsideration is appropriate under Federal Rule of Civil Procedure 59(e) on the ground that there is a need to correct a clear error and to prevent manifest injustice with respect to the denial of relief to AFSCME on behalf of these members specifically.

This aspect of the Court's Memorandum Opinion was based on a clear error insofar as it concluded that AFSCME's members in Alaska and in Jackson County were not entitled to injunctive relief because the elected officials of those jurisdictions had not participated in the litigation and thus, in the Court's view, granting AFSCME injunctive relief as to unlawful funding cuts in those jurisdictions "could lead the federal government to pay money to entities that have not asked for it." Mem. Op. at 42. That premise is incorrect; as the Memorandum Opinion explains elsewhere, *id.* at 40, the government pays grantees the funds at issue only when those grantees submit reimbursement claims for them. There is thus no risk that an award of injunctive relief on behalf of these AFSCME members would force these jurisdictions to accept funds that they do not want to receive.

The Memorandum Opinion's reliance on this incorrect premise also will result in manifest injustice, especially since, as this Court correctly concluded, AFSCME is likely to succeed on the merits of its separation of powers and ultra vires claims, and its members have suffered irreparable harm from Defendants' unlawful termination of COVID-19-related CDC grant programs. Mem. Op. at 7–8, 20, 37–38. Any harm caused by the lack of participation by elected officials in Alaska and Jackson County in this litigation—which will not have the effect of forcing them to receive money they do not want—is markedly outweighed by the inequities that will result if AFSCME's members in those two jurisdictions, who have lost their jobs and are without income and other legal recourse, are not afforded relief.

## BACKGROUND

### A. Procedural Background

Plaintiffs are four local governments and AFSCME, whose members include current and former employees of local and state governments that had grants terminated as a result of Defendants' unlawful Mass Termination Decision ("AFSCME members").[1] In April 2025, Plaintiffs filed a complaint and a motion for a preliminary injunction seeking relief from Defendants' Mass Termination Decision. As Plaintiffs articulated in their motion for a preliminary injunction, the Mass Termination Decision caused them irreparable harm, abruptly cutting the Plaintiff Local Governments and employers of AFSCME members off from federal funding used to provide critical aspects of their public health programs that were designed to detect and mitigate infectious disease in their

[1] If not defined herein, the capitalized terms used in this motion are defined in Plaintiffs' memorandum of law in support of their motion for a preliminary injunction, ECF No. 14-1 ("Pls.' PI Mem. of Law").

communities, at a time when diseases like measles were on the rise.[2] Pls.' PI Mem. of Law at 17.

Defendants' Mass Termination Decision caused the termination of many state and local public health employees around the country, including hundreds of AFSCME members, and will lead to yet more employee terminations by public health employers not covered by an injunction. Pls.' PI Mem. of Law at 15–16 (citing O'Brien Decl. ¶ 7; Spiegel Decl. ¶ 11; Johnson Decl. ¶ 17 ("Due to the CDC's premature cancellation of our Enhanced Operation grant, Columbus Public Health has had to terminate eleven full time staff members . . . charged with infectious disease tracing, investigations, and community response coordination."); Maddox Decl. ¶¶ 9–10, 15 (Harris County) ("[u]nless the grants are restored, this will result in the termination of grant-funded positions"; "HCPH will have to reduce staffing levels"; "the terminated grants support the employment of . . . 66 full-time employee positions and 37 temporary employee positions")).

Terminated employees, including in Alaska and Jackson County, were left without income and health insurance. Pls.' PI Mem. of Law at 15–16, 34–35 (citing O'Brien Decl. ¶ 7; Hewitt Decl. ¶¶ 7–9 (Alaska employee layoffs resulted in loss of health insurance); Peters-Wiseman Decl. ¶ 8 (Jackson County layoffs resulted in loss of health insurance)). Many of these terminated AFSCME members are highly trained individuals that have devoted their careers to public health work, and are now without any income or benefits to show for their dedication, and without an opportunity to pursue the same or similarly meaningful work elsewhere. Pls.' PI Mem. of Law at 16 (citing Spiegel Decl. ¶ 6; Hewitt

---

[2] *See* Teddy Rosenbluth & Jonathan Corum, *Measles Cases Hit Highest Total Since U.S. Eliminated the Disease*, N.Y. Times (July 9, 2025), https://perma.cc/S36C-QH7B.

Decl. ¶ 9; Henry Decl. ¶ 13). And other AFSCME members, such as those employed by Alaska, will be transferred to jobs that they did not apply for, are overqualified for, or are located in areas further from the employees' homes, causing both monetary and psychological harm. Pls.' PI Mem. of Law at 16 (citing Heddings Decl. ¶¶ 12–14). AFSCME members who retain their current positions are also harmed, both as employees of public health departments and residents of the jurisdictions those departments serve, by the loss of the important work of their colleagues on critical public health initiatives. Pls.' PI Mem. of Law at 35, 38 (citing Heddings Decl. ¶¶ 8, 17 (Alaska); Peters-Wiseman Decl. ¶ 9 (Jackson County)).

**B. The Court's Memorandum Opinion and Order**

This Court entered a preliminary injunction on June 17, 2025, ruling that all Plaintiffs including AFSCME had standing; that the Court had jurisdiction over all Plaintiffs' constitutional claims; that all Plaintiffs had demonstrated that they were likely to succeed on the merits as to their separation of powers and ultra vires claims for grants that were issued pursuant to certain congressional appropriations; and that all Plaintiffs would suffer irreparable harm absent an injunction. Mem. Op. at 7, 9–13, 16–21, 35–38. As to AFSCME, the Court held that it faced irreparable harm because, as its declarations confirmed, many of its members have already lost their jobs, and hundreds more were at risk of losing their jobs. *Id.* at 37. AFSCME members, the Court correctly determined, could not recoup lost wages and benefits because they were employed by local governments and thus could not sue the federal government for those money damages. *Id.*

at 38. The Court thus held that AFSCME had standing, was likely to succeed on two of its constitutional claims, and its members suffered irreparable harm.[3]

In analyzing the last preliminary injunction prong concerning the balance of equities and public interest, however, the Court held that the equities weighed in favor of not extending the scope of the injunction to cover public employers other than the Plaintiff Local Governments. The Court first ruled that any financial burden on the federal government resulting from an injunction restoring grants for the Plaintiff Local Governments was outweighed by "the significant public interest in promoting public health." *Id.* at 39–40. Then, after denying nationwide relief, *id.* at 40–41, the Memorandum Opinion determined that the Court's injunction would also not cover Alaska and Jackson County, specifically. The Memorandum Opinion denied relief covering Alaska and Jackson County on the ground that the elected officials of those jurisdictions had not sued to recover the terminated funds and injunctive relief "could lead the federal government to pay money to entities that have not asked for it." *Id.* at 42.

In weighing the equities as to AFSCME's members in Alaska and Jackson County, the Court did not address the fact that the significant interest in promoting public health that warranted injunctive relief for the Plaintiff Local Governments applied equally to the public health work performed by the AFSCME members terminated in Alaska and Jackson County, many of whom had already been terminated from their jobs and could not carry out their critical public health functions in those jurisdictions. The Court also did not weigh

[3] Because the Court concluded that AFSCME had associational standing, it did not address AFSCME's organizational standing. Mem. Op. at 8 n.4. The Court concluded that AFSCME had shown irreparable harm to its members due to their loss of employment and risk of further job loss. *Id.* at 37. It did not reach the remainder of irreparable harms set forth in Plaintiffs' motion.

the harm those individual members faced as a result of their terminations, harm the Court found to be irreparable. *Id.* at 37–38.

## STANDARD OF REVIEW

A motion to reconsider brought within 28 days of judgment is governed by Fed. R. Civ. P. 59(e). *Strumsky v. Wash. Post Co.*, 922 F. Supp. 2d 96, 100 (D.D.C. 2013). Under that Rule, the Court may amend or reconsider its order based on "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *D'Amore v. Small Bus. Admin.*, No. 21-cv-1505 (CRC), 2024 WL 3251224, at *2 (D.D.C. July 1, 2024) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).

## ARGUMENT

For the reasons articulated below, the Memorandum Opinion was based on a clear error insofar as it denied relief with respect to AFSCME members in Alaska and Jackson County based on the Court's view that an injunction would require the federal government to pay money to jurisdictions that have not asked for it. That premise is factually incorrect, and reconsideration is warranted to correct that clear error and prevent the resulting manifest injustice to AFSCME's members in those two jurisdictions, in particular those who are now without pay and benefits—which, as the Court correctly determined, they cannot otherwise recoup.

AFSCME does not ask this Court to revisit its preliminary conclusion that nationwide relief is not warranted, and requests only relief narrowly targeted to two jurisdictions, Alaska and Jackson County, where AFSCME has already established (and the Court has already found) irreparable harm to AFSCME members who have been

terminated due to Defendants' unlawful grant terminations. The record also demonstrates that AFSCME members who continue to work as public health employees in these jurisdictions are irreparably harmed in yet additional ways. *See supra* pp. 3–4.

AFSCME agrees with the Court's observation that, should the Court eventually hold on summary judgment that the Mass Termination Decision violated the Administrative Procedure Act, the appropriate remedy under 5 U.S.C. § 706 could include vacatur of grant rescissions as to all grant recipients. Mem. Op. at 42. In the meantime, however, AFSCME believes that in light of its strong showing on both the underlying merits and the irreparable harm to its members, preliminary relief to preserve the status quo in Alaska and Jackson County is warranted, and AFSCME therefore respectfully requests that the Court reconsider its decision not to extend relief to those two jurisdictions.

### A. This Court Should Reconsider its Memorandum Opinion Because of Its Clear Error

AFSCME's request for reconsideration is narrow, seeking only relief with respect to two jurisdictions that the Memorandum Opinion expressly excluded from the scope of the preliminary injunction despite having found that AFSCME's members there were irreparably harmed by the Mass Termination Decision.[4] As a result of a factual misunderstanding regarding how the grant funds were paid to jurisdictions, the

[4] AFSCME notes that the fact AFSCME members in Washington State who received layoff notices have benefited from an injunction brought by state attorneys general in separate litigation, Mem. Op. at 41, does not obviate AFSCME's irreparable harm for purposes of obtaining an injunction covering them as well. *See, e.g.*, *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget,* No. 25-cv-239, 2025 WL 597959, at *18 n.13 (D.D.C. Feb. 25, 2025); *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 60 (D.D.C. 2020); *Mayor of Balt. v. Azar*, 392 F. Supp. 3d 602, 618–19 (D. Md. 2019). However, AFSCME does not, in the instant motion for partial reconsideration, ask the Court to revisit its conclusion not to apply its injunction to Washington, just as AFSCME does not ask this Court to revisit its decision to deny nationwide relief, but it reserves the right to seek such relief at a later stage in this litigation.

Memorandum Opinion erred in denying relief covering Alaska and Jackson County, even though the same reasons that warranted injunctive relief for Plaintiff Local Governments applied to those two jurisdictions as well. Public officials in Alaska and Jackson County would retain the right to decline (or not to seek) funds from the federal government if this Court's injunction running against the federal government were to be extended to include these jurisdictions. But those officials' right to do so should have had no bearing on whether the irreparable harm experienced by AFSCME's members in those localities warranted injunctive relief.

As this Court determined, the grants at issue "work on a reimbursement model, so plaintiffs would draw from them as they incur expenses." Mem. Op. at 40. That fact persuaded the Court to hold that the equities weighed in favor of granting a preliminary injunction for the Plaintiff Local Governments because any "potential burden on the public fisc is not sufficiently great here to deny the local-government plaintiffs preliminary relief." *Id.* at 39. As the Court further stated, in addition to the amount in dispute representing "a relatively small outlay for the federal government," there was no certainty that the government would spend all of the $32.7 million these Plaintiffs alleged they were owed, because the local governments might not request reimbursement for that full amount. *Id.* at 39–40. This Court also correctly extended relief with regard to the Plaintiff Local Governments' indirect grants, *see id.,* which include indirect grants to Plaintiff City of Columbus that pass through the State of Ohio, mitigating any administrative burden of applying the preliminary injunction to Jackson County.

The Court's determination as to the Plaintiff Local Governments should have applied with equal force to Alaska and Jackson County. As with the Plaintiff Local

Governments, the officials in Alaska and Jackson County, should they decline any federal funding from the grants at issue, also may elect not to request reimbursement from the federal government. The Memorandum Opinion's concern that a preliminary injunction "could lead the federal government to pay money to entities that have not asked for it," *Id.* at 42, thus would have been assuaged had the Memorandum Opinion considered that the grants for the two jurisdictions worked on the same reimbursement model that applied to Plaintiff Local Governments. The Memorandum Opinion's oversight in this regard warrants reconsideration. *See, e.g.*, *Campaign Legal Ctr. v. FEC*, 578 F. Supp. 3d 1, 580, 583 (D.D.C. 2021) (granting motion for reconsideration where court order relied on mistaken factual determination); *DAG Enters. v. Exxon Mobile Corp.*, No. 00-cv-0182, 2005 WL 475274, at *1–2, *4 (D.D.C. Feb. 25, 2005) (granting motion for reconsideration where "the foundation of the Court's" prior order was "now in doubt"). *See also Elev8 Balt., Inc. v. AmeriCorps,* No. 25-cv-1458, 2025 WL 1865971, at *3, *27–29 (D. Md. July 7, 2025) (granting preliminary injunction to nongovernmental subgrantees of states despite the fact that states had not sued to recoup the funds in question which were granted directly to agency by states).

Moreover, just as the potential cost to the federal government was outweighed by the irreparable harm suffered by the Plaintiff Local Governments, justifying injunctive relief in their favor, any impairment to the federal government in granting additional relief to only two other jurisdictions, Alaska and Jackson County, is outweighed by the irreparable harm to the AFSCME public health workers in those jurisdictions. *See Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1330 (D.C. Cir. 2024), *cert. denied sub nom. Alpine Sec. Corp. v. Fin. Indus. Auth.*, No. 24-904, 2025 WL 1549780 (U.S. June

2, 2025) (balance of equities tips in favor of granting injunctive relief where the magnitude of the injury to moving party outweighs impairment to non-moving party). The Court's finding that AFSCME members suffered irreparable harm, coupled with the Court's determination that AFSCME members (along with the other Plaintiffs) were likely to succeed on the merits on their separation of powers and ultra vires claims, Mem. Op. at 35, should have carried the same weight in the Memorandum Opinion's consideration of the public interest. As the D.C. Circuit has held, "the public interest in such cases 'rises and falls with the strength of [the moving party's] showing' on the merits." *Hanson v. District of Columbia*, 120 F.4th 223, 247 (D.C. Cir. 2024), *cert. denied*, No. 24-936, 2025 WL 1603612 (U.S. June 6, 2025) (quoting *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 335 (D.C. Cir. 2018)).

### B. Absent Reconsideration, Manifest Injustice Will Result to AFSCME's Members, Who the Court Determined Will Suffer Irreparable Harm

Although the Memorandum Opinion did not discuss the harm to AFSCME's members in Alaska and Jackson County when balancing the equities with regard to those two localities, it concluded earlier in its opinion that these employees would suffer irreparable harm from which they had no other recourse. In determining whether AFSCME's members were entitled to injunctive relief, the Court ruled that AFSCME would suffer irreparable harm resulting from the loss of employment and associated benefits. Mem. Op. at 37. Unlike other individuals who might be able to seek retroactive relief such as backpay from the loss of employment, AFSCME's members who worked in state and local public health departments did not have the same luxury. As the Court stated, "AFSCME members who lose their jobs due to federal-funding cuts likely cannot sue the federal government to recover backpay or any other remedies. That is because they are

employed not by the federal government but by state and local governments, so any suit against the federal government for backpay or other damages would likely be barred by sovereign immunity." *Id.* at 38. Moreover, as noted *supra* pp. 3–4, Plaintiffs' Motion for Preliminary Injunction, and its supporting declarations, set forth at length additional examples of irreparable harm, including specifically to AFSCME members in Alaska and Jackson County.

AFSCME's members, according to this Court's own ruling, are likely to succeed on the merits of their claims; have experienced significant, irreparable harm; and have no other recourse outside of this Court. A fundamentally unfair outcome therefore will result if the Court does not grant reconsideration.

**CONCLUSION**

For these reasons, AFSCME respectfully requests that the Court reconsider the denial of injunctive relief with respect to AFSCME members who are public employees in Alaska and Jackson County.

Dated: July 15, 2025

Respectfully submitted,

/s Joel McElvain
JOEL McELVAIN
(DC Bar No. 448431)
POOJA BOISTURE*
SKYE L. PERRYMAN
(DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
jmcelvain@democracyforward.org
pboisture@democracyforward.org
sperryman@democracyforward.org

MATTHEW S. BLUMIN
(DC Bar No. 1007008)
GEORGINA C. YEOMANS
(DC Bar No. 1510777)
American Federation of State, County, and Municipal Employees, AFL-CIO
1625 L. Street NW
Washington, DC 20036
(202) 775-5900
MBlumin@afscme.org
GYeomans@afscme.org

*Counsel for AFSCME*

*Admitted *pro hac vice*