IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRIS COUNTY, TEXAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT F. KENNEDY, JR., in his official capacity as Secretary of United States Department of Health and Human Services, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-1275-CRC |

**DEFENDANTS' OPPOSITION TO PLAINTIFF AFSCME'S MOTION
FOR PARTIAL RECONSIDERATION**

Plaintiff American Federal of States, County, and Municipal Employees (AFSCME) seeks the extraordinary remedy of reconsideration of the Court's decision declining to extend its preliminary injunction to cover grants to the State of Alaska and Jackson County, Ohio. But the Court should not even consider this request, because the Reconsideration Motion exposes a critical defect in AFSCME's Article III standing: its inability to show redressability, *vis a vis* Alaska and Jackson County, which are third parties, not before the Court.

In its Motion, AFSCME repeatedly asserts that even if the Court grants the relief it seeks—essentially, an order that the Centers for Disease Control and Prevention (CDC) reinstate its terminated grants with Alaska and Jackson County—then "[p]ublic officials in Alaska and Jackson County would retain the right to decline" funding from CDC. *See* Pl. Br. (Doc. 39-1) at 8. Redress, therefore, admittedly depends upon the unfettered action of these third parties, not before the Court—and AFSCME does nothing to show that redress is likely, as opposed to

1

speculative—let alone "substantially likely." Consequently, AFSCME fails to establish standing (either associational or organizational), and the Court lacks jurisdiction over these claims.

Even if the Court reaches the merits of the Motion, AFSCME fails to show "clear error" or "manifest injustice," as required under Federal Rule of Civil Procedure 59(e). The Court confined its preliminary injunction to the four local government plaintiffs which filed this suit, and declined AFSCME's request to extend it to Alaska or Jackson County merely on the grounds that some of its members there purportedly lost their jobs as a result of the grant terminations. *See* Mem. Op. (Doc. 33) at 42. As the Court explained, "Neither jurisdiction sued to recoup these funds, a decision that their elected officials were entitled to make for themselves and their constituents. The Court will not override that decision lightly, especially given the uncertainty over the jurisdictional issues discussed [in the Opinion]." *Id*. Now, AFSCME argues that the Court misapprehended that an extension of its preliminary injunction to Alaska and Jackson County would have inappropriately "forced" funds onto those governments—when in fact (as noted above) "[p]ublic officials [in those governments] would retain the right to decline" those funds. *See* Pl. Br. at 1, 8. This is a misconstruction of the Opinion, and clearly does not provide grounds to invoke the extraordinary remedy of reconsideration.

I.   **The Motion for Reconsideration Reveals that AFSCME lacks Standing Because Redress Depends upon the Independent Action of Third Parties Not Before the Court**

"Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff"—and "[t]he key word is 'likely.'" *Hecate Energy LLC v FERC*, 126 F.4th 660, 665 (D.C. Cir. 2025) (quotations omitted). "[I]t is a bedrock principle that a federal court cannot redress injury that results from the independent action of some third party not before the court." *Murthy v. Missouri*, 603 U.S.

43, 57 (2024) (quotation omitted). "In keeping with this principle," the Supreme Court has explained, "we have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Id*. (quotation omitted). "Rather than guesswork, the plaintiffs must show that the third-party . . . will likely react in predictable ways to the defendants' conduct." *Id*. (quotation omitted). Specifically, the D.C. Circuit has explained:

> [S]tanding is *substantially* more difficult to establish when it depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict. In such cases, the plaintiff must offer *substantial* evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress.
> * * * *
> When redress depends on the cooperation of a third party, it becomes the burden of the [plaintiff] to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.

*Cierco v. Mnuchin*, 857 F.3d 407, 418-419 (D.C. Cir. 2017) (quotations omitted) (emphasis added). Thus, "[i]f it is instead just as plausible that the court's action will not redress the plaintiff's injury as that it will, Article III's redressability requirement is not met." *Hecate Energy*, 126 F.4th at 667 (quotation omitted) (explaining that plaintiff "does not show that [a favorable decision] would make it likely—let alone substantially likely—that its requested relief would spur" the third party so as to redress plaintiff's injury). *See also, Spectrum Five LLC v. FCC*, 758 F.3d 254, 260-61 (D.C. Cir. 2014).

AFSCME pleads itself out of redress by relying on hypothetical actions of Alaska and Jackson County, which are beyond the control of AFSCME or the Court. The Reconsideration Motion expressly admits that these jurisdictions very well might act contrary to the speculative chain of events upon which ASCME's claim of redressability depends. For example, the Motion asserts, "Public officials in Alaska and Jackson County would *retain the right to decline (or not*

3

*to seek)* funds from the federal government if this Court's injunction running against the federal government were to be extended to include these jurisdictions." Pl. Br. at 8 (emphasis added). Likewise, the Motion explains that "[t]he officials in Alaska and Jackson County, *should they decline any federal funding from the grants at issue,* also may elect not to request reimbursement from the federal government." *Id*. at 8-9 (emphasis added).

This redressability defect previously evaded review. "Typically . . . . traceability and redressability overlap as two sides of a causation coin." *Doc Society v. Rubio*, 141 F.4th 1273, 1277-78 (D.C. Cir. 2025) (quotation omitted). This may be why the Court did not specifically address redressability when considering associational standing for AFSCME, although it addressed injury and causation/traceability. *See* Mem. Op. at 7 ("Here, individual members of AFSCME have standing because they were employed by grant recipients and were let go because their employers lost grant funding.").[1]

Even assuming the Court properly found causation as to AFSCME, "redressability cannot always be logically inferred from traceability." *Doc Society,* 141 F.4th at 1277-78. "There might be some circumstances in which governmental action is a substantial contributing factor in bringing about a specific harm, but the undoing of the governmental action will not undo the harm." *Id.* (quotation omitted). This is one of those circumstances, as the Reconsideration Motion makes clear.

"To determine whether an injury is redressable, we consider the relationship between the judicial relief requested and the injury suffered." *Murthy*, 603 U.S. at 73 (quotation omitted). Here, the relief AFSCME seeks, in essence, is CDC's reinstatement of the following direct grants

---

[1] Plaintiffs' preliminary injunction briefing addressed redressability for the four local government plaintiffs (*see* Pls.' Reply ISO of their Mot. for a Prelim. Inj. (Doc. 23) at 9), but did not address redressability for AFSCME. *See id.* at 9-11. The Opinion likewise addresses redressability for the local government plaintiffs (s*ee* Mem. Op. at 6-7), but not for AFSCME.

from CDC to Alaska and Jackson County (as identified by AFSCME), which CDC terminated in March 2025:[2]

**Alaska**
- Immunization and Vaccines for Children, Award #20NH23IP922592, expired June 30, 2025

- Health Disparities, Award #21NH75OT000052, expires May 31, 2026

- Epidemiology and Laboratory Capacity for Prevention and Control of Emerging Infectious Diseases, Award #19NU50CK000509, expires July 31, 2027

**Jackson County**
- Community Health Workers for Covid Response and Resilient Communities, Award #21NU58DP007014, expires August 30, 2025

*See generally*, Pls.' Mem. ISO of their Mot. for a Prelim. Inj. (Doc. 14-1) at 11;[3] *see also* Exhibit 1 (Notice of Award for each).

Continuing the test, the alleged injury suffered, for both associational and organization standing, concerns or stems from AFSCME members in these jurisdictions losing their jobs.[4] Specifically, for associational standing purposes, the asserted injury is that AFSCME members "were let go because their employers lost grant funding," as the Court observed. *See* Mem. Op. at 7. For organizational standing, AFSCME's asserted injury is that the union has "divert[ed] significant resources . . . to support members who have lost jobs" (Pls.' Reply ISO of their Mot. for a Prelim. Inj. (Doc. 23) at 11 (citing O'Brien Decl., ¶ 7)), and that it has suffered lost dues and diminished bargaining power, due to these lost jobs. *See id*. (citing Spiegel Decl., ¶ 14 (re

---

[2] AFSCME's proposed order seeks, in relevant part, an injunction against "enforcing or otherwise giving effect to the March 2025 terminations of any grants issued directly or indirectly to Alaska and Jackson County" under the specified appropriations statutes. *See* Doc. 39-2 (proposed order) at 1. As explained *infra*, Plaintiffs do not identify "any indirect grants." *See id.* at 2.

[3] Defendants have confirmed with Plaintiffs that the above-referenced Ohio grant is a direct grant (notwithstanding reference in Plaintiffs' preliminary injunction briefing suggesting that it is an indirect grant. *See* Pls.' Mem. ISO of their Mot. for a Prelim. Inj. (Doc. 14-1) at 11).

[4] Specifically, as the Court later observed, "AFSCME reports that 23 members in Alaska and three members in Jackson County were laid off due to the funding terminations." See Mem. Op. at 41 (citation omitted).

5

Washington State job terminations) and Henry Decl., ¶ 14 (re City of Columbus job terminations)). For both forms of standing, the judicial relief requested likely would alleviate AFSCME's injury only if Alaska and Jackson County actually expend the (hypothetically) reinstated grants to rehire the terminated AFSCME members.

But by AFSCME's own admission, Alaska and Jackson County may exercise their "right to decline (or not to seek) funds from the federal government," in which case, the requested relief will not restore the lost jobs. See Pl. Br. at 8. And to be clear, the expenditure of federal funds by these third parties is not the only link in AFSCME's speculative chain for redress. Even if, hypothetically, Alaska and Jackson County do expend the funds, they also have the right to decide *how* to spend the funds—specifically, whether or not to rehire the terminated AFSCME members for any new or reinstated program.

This chain of events, outside the control of both the Court and AFSCME, is highly speculative. For one, take the expiration dates of these terminated awards. The awards have stated periods of performance, and as shown above, naturally expire at different times through calendar years 2025, 2026, and 2027. Notably, the sole award to Jackson County (as identified by AFSCME) expires on **August 30, 2025**. Even if the Court grants the requested relief, Jackson County might decline to expend the funds because of insufficient remaining time. Or, if Jackson County expends the funds, it may use them on something other than rehiring the terminated AFSCME members given the short time window available. And for Alaska, the Immunization and Vaccines for Children grant already expired on June 30, 2025, as shown above.[5]

---

[5] Plaintiffs never sought an extension of these natural expiration dates as relief. Rather, Plaintiffs asked the Court only to order Defendants to reinstate those awards. *See, e.g.* Compl. at 53 (Prayer for Relief), para. D ("Enjoin Defendants to reinstate Plaintiffs' grants for the awarded project periods . . . ."); *see also* Pls.' Mem. ISO of their Mot. for a Prelim. Inj. (Doc. 14-1) at 41-42. Plaintiffs also have not demonstrated that the Court would have the power to direct that relief in any event.

Another reason Alaska and Jackon County may exercise their "right to decline" the federal funds is the potential issue of indemnification. While the Court recognized that "if plaintiffs were later to lose on the merits or on appeal, then the federal government would be hard-pressed to get those funds back," this remains an issue. *See* Mem. Op. at 39. Alaska and Jackson County may figure this potential contingency into their decision to expend or decline any federal funds stemming from an order from this Court.

And the Motion itself recognizes as a real possibility that Alaska and Jackson County might in fact exercise their right to "decline any federal funding from the grants"—especially given the decision by their elected officials not to sue or participate in this suit. *See* Pl. Br. at 9. Indeed, the very purpose of the Reconsideration Motion is supposedly to clarify for the Court that "[p]ublic officials in Alaska and Jackson County would retain the right to decline" funding from CDC, so the Court need not have worried that it might (inadvertently) "force these jurisdictions to accept funds that they do not want to receive." See *id*. at 1, 8.

It is insufficient for AFSCME simply to rely upon the hope that the Court's order will spur Alaska and Jackson County to expend the funds, and to rehire the terminated AFMCME members. These "are not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced." *Murthy*, 603 U.S. at 73-74 (quotation omitted). The Supreme Court recently emphasized this:

> Redressability requires that the court be able to afford relief *through the exercise of its power,* not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power. . . . It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability.

*Haaland v. Brackeen*, 599 U.S. 255, 293-294 (2023) (quotations omitted) (concluding that enjoining the federal parties would not remedy the alleged injury, because "[t]he state officials

7

who implement [the challenged statute] are not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced."). *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 (1992) ("[R]esolution by the District Court would not have remedied [plaintiffs'] alleged injury anyway, because it would not have been binding upon the agencies. They were not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced."); *see also, Doe 1 v. Apple Inc.*, 96 F.4th 403, 413-414 (D.C. Cir. 2024) (concluding that "[b]ecause plaintiffs have failed to show that an injunction against the Tech Companies would appreciably redress their injuries, injunctive relief would be largely hortatory and outside the proper role of Article III"— notwithstanding plaintiffs' suggestion that "the Tech Companies have substantial market power and could simply insist that Cobalt suppliers stop using forced labor."); *Young Am.'s. Found. v. Gates*, 573 F.3d 797, 800-801 (D.C. Cir. 2009) (dismissing case for lack of jurisdiction where it was speculative whether an order compelling the Secretary of Defense to withhold funds from a university would motivate the university to act to ensure that the organizations' members could meet with military recruiters unimpeded at on-campus job fairs).

      Plaintiffs make no specific allegations about redressability. Nor does AFSCME provide any evidence as to what Alaska or Jackson County would do if the Court awarded AFSCME the relief it seeks. AFSCME provides no declaration from those jurisdictions. AFSCME provides declarations only from its own members and personnel. *See* Docs. 14-11 through 14-16. Thus, AFSCME does nothing to show that redress is likely, as opposed to speculative—let alone "substantially likely." *See Hecate Energy*, 126 F.4th at 667.

      This is particularly problematic because the Supreme Court has explained that "[o]ur standing inquiry has been especially rigorous when reaching the merits of the dispute would

force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 408 (2014) (quotation omitted). That is the case here, where Plaintiffs assert both separation of powers and Spending Clause claims, and where AFSCME specifically predicates its Reconsideration Motion on the Court's determination that Plaintiffs "were likely to succeed on the merits of their separation of powers and ultra vires claim." *See* Pl. Br. at 10 (citing Mem. Op. at 35).

Any hypothetical "indirect awards," as referenced in AFSCME's proposed order, would only compound the redress defect. AFSCME does not identify any "indirect awards," and as explained above, Defendants understand that all of the awards at issue to Alaska and Jackson County are direct awards. In any event, to the extent the proposed order contemplates, for example, an award from CDC to the State of Ohio (the so-called Prime recipient), which then issues a subaward to Jackson County (sub-awardee), the redressability defect is compounded. In that scenario, redress would be doubly speculative because it would depend upon the "unfettered choices" of *two* "independent actors not before the courts"—Ohio and Jackson County. *See Cierco*, 857 F.3d at 418 (quotations omitted).

Defendants respectfully request that the Court deny the Reconsideration Motion because AFSCME lacks standing. "A plaintiff must demonstrate standing separately for each form of relief sought." *Id*. at 416 (quotation omitted). "Standing can be raised at any point in a case proceeding and, as a jurisdictional matter, may be raised, *sua sponte*, by the court." *Id*. at 415 (quotation omitted).

## II.     AFSCME Fails to Show Grounds for Reconsideration

Even if the Court reaches the substance of AFSCME's reconsideration request, it fails to meet the extraordinary circumstances required. "Rule 59(e) motions are disfavored and should

only be granted in extraordinary circumstances . . . ." *D'Amore v. Small Business Administration*, 2024 WL 3251224, *2 (D.D.C. July 1, 2024) (Cooper, J.) (quotation omitted). Such a motion "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id*. (quotation omitted). "However, once the parties have battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Citizens for Responsibility and Ethics in Washington v. U.S. DOGE Service*, 2025 WL 863947, *3 (D.D.C. Mar. 19, 2025) (Cooper, J.) (quotation omitted). "[A Rule 59(e) motion] is not simply an opportunity to reargue facts and theories upon which a court has already ruled. Nor is a motion for reconsideration an avenue to present theories or arguments that could have been advanced earlier." *Id*. (quotation omitted). "District courts have *substantial discretion* in ruling on motions for reconsideration." *Strumsky v. Washington Post Co*., 922 F. Supp. 2d 96, 100 (D.D.C. 2013) (quotation omitted).

      AFSCME alleges "clear error" and "manifest injustice" based on the theory that the Court had a "factual misunderstanding regarding how the grant funds were paid to jurisdictions." Pl. Br. at 7. AFSCME argues that this misunderstanding led the Court to erroneously believe that extending the preliminary injunction to include grants to Alaska and Jackson County "could lead the federal government to pay money to entities that have not asked for it." *Id.* at 1 (quoting Mem. Op. at 42). In other words, according to AFSCME, the Court misapprehended that an "award of injunctive relief . . . would *force* these jurisdictions to accept funds that they do not want to receive." *Id*. (emphasis added). AFSCME therefore emphasizes that Alaska and Jackson County in fact "retain the right to decline" funding from the CDC. *Id*. at 8. In other words, if Court ordered reinstatement of the grants to Alaska and Jackson County, and those

10

jurisdictions decided that they did not want the funds, they simply could exercise their right to "decline any federal funding from the grants." *See id.* at 9.

This misconstrues the Court's actual reasoning. The plain language of the Opinion reflects that the Court simply was respecting the deliberate decision of these two governments not to join this lawsuit (or any other for that purpose). "Neither jurisdiction sued to recoup these funds, a decision that their elected officials were entitled to make for themselves and their constituents." Mem. Op. at 42. The Court should continue to respect the decision of these elected officials and deny the Reconsideration Motion.

In addition, this was not the only reason why the Court declined to extend the preliminary injunction to Alaska and Jackson County. The Court also emphasized "the uncertainty over the jurisdictional issues . . . ." *See id*. The Reconsideration Motion nowhere mentions this rationale. Yet the Opinion repeatedly refers to this "uncertainty" about jurisdiction. *See id*. at 31, 32, 41, 42.

Moreover, there was no "factual misunderstanding regarding how the grant funds were paid to jurisdictions," as AFSCME asserts. *See* Pl. Br. at 7, 9 (alleging an "oversight in this regard"). The Court expressly acknowledged the reimbursement model. *See* Mem. Op. at 40 ("As plaintiffs' counsel represented at argument, these grants work on a reimbursement model, so plaintiffs would draw from them as they incur expenses") (citation omitted).

Finally, AFSCME overlooks that "'[a] preliminary injunction is an extraordinary remedy never awarded as of right[,]'" and AFSCME shouldered the burden to make a "'clear showing'" on the factors. *See id.* at 6 (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008) and *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). AFSCME fails to show how the Court abused its discretion in determining that AFSCME failed to carry

this burden with respect to the balance of equities and the public interest. *See id*. at 38-42. The Motion therefore fails to show "clear error" or "manifest injustice."

## CONCLUSION

The Court should deny the Reconsideration Motion.

DATED: August 5, 2025  Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ Steven M. Chasin*
STEVEN M. CHASIN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-0747
Steven.M.Chasin2@usdoj.gov

*Counsel for Defendants*