IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HARRIS COUNTY, TEXAS**, *et al*., <br><br> *Plaintiffs*, <br><br> v. <br><br> **ROBERT F. KENNEDY, JR.**, in his official capacity as Secretary of Health and Human Services, *et al*., <br><br> *Defendants*. | Case No. 1:25-cv-01275-CRC |

**PLAINTIFF AFSCME'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL RECONSIDERATION**

**INTRODUCTION**

AFSCME seeks limited reconsideration to modestly expand the Court's preliminary injunction to cover two public employers—Jackson County, Ohio, and the State of Alaska—whose employees, AFSCME members, were terminated from their jobs as a direct result, and solely because, of Defendants' unlawful conduct.

In the opening brief, AFSCME explained that the preliminary injunction ruling incorrectly withheld injunctive relief from it on the premise that an injunction could "lead the federal government to pay money to entities that have not asked for it." Mem. Op. at 42. AFSCME explained that, given the grants' reimbursement model, there is no risk that an award of injunctive relief on behalf of affected AFSCME members would force the employer jurisdictions to accept funds that they do not want to receive.

Defendants now contend that AFSCME has pled "itself out of redress." Defs.' Br. at 3. In Defendants' view, the possibility that these two grantees might decline funds to which they would be entitled means that an order from this Court could not redress AFSCME's injuries. But the record shows that these grantees had been successfully implementing their grants through the work of AFSCME members before Defendants' illegal Mass Termination Decision, and it is a common-sense inference that these grantees would resume their work even if they are not legally forced to do so. Defendants elevate an unlikely possibility over the common-sense and evidence-based likelihood that these two grantees, which previously affirmatively sought, received, and used the disputed funding to employ AFSCME members, would resume their pre-dispute conduct, thereby redressing AFSCME's harm. Because Defendants' response asks the Court to elevate speculation over probability, they have failed to defeat AFSCME's showing of standing, including redressability.

Defendants also tersely argue that ASCME has failed to show grounds for reconsideration. In doing so, they attribute to this Court an intention to condition relief to AFSCME—a party properly before the Court, with a strong likelihood of success and irreparable harm—on the unexplained decision of these two public employers not to sue to recoup their lost funding. AFSCME does not read this Court's opinion to condition relief on the localities' litigation decisions, but instead understands the Court's decision to be based on a misunderstanding of the grants' reimbursement model when considering this particular aspect of Plaintiffs' requested relief. To the extent Defendants accurately read the Court's opinion, however, that is another reason to grant reconsideration, as the Supreme Court has made clear that a plaintiff properly before the Court should not be denied redress based on the happenstance of third parties' litigation choices.

Finally, contrary to Defendants' arguments otherwise, the Court's decision to avoid a ruling on whether it has jurisdiction over Plaintiffs' APA claims did not serve as the basis for the Court's denial of relief to AFSCME. This Court found that AFSCME, like the other Plaintiffs, was likely to succeed on its ultra vires claims, and so Defendants' effort to recast this Court's opinion could not justify denying injunctive relief to AFSCME alone.

## ARGUMENT

### I. AFSCME Has Standing to Seek Reinstatement of Grants, the Cancellation of Which Directly Resulted in Its Members' Terminations

Defendants principally argue that this Court should deny the instant reconsideration motion because AFSCME lacks standing to seek the reinstatement of HHS grants to Alaska and Jackson County, Ohio, the cancellation of which directly caused those public employers to terminate AFSCME members. In Defendants' view, the likelihood that a preliminary injunction would redress AFSCME's harm is too speculative to accord them a right to relief because (1) the

3

grantees might decline to accept the reinstatement of their HHS funds; and (2) even if the localities accept the funds, they may decide to use them for purposes other than rehiring the terminated AFSCME members. Defendants' argument is unsupported by case law and has no basis in the record. It is entirely logical that Alaska and Jackson County, both of which had asked for and were receiving the disputed grant money before it was unlawfully terminated, would accept the resumption of that funding. And it is just as likely that the localities would put that money back to its prior use, which would necessarily be carried out (as it was before) by AFSCME-represented employees, since AFSCME is the exclusive collective bargaining representative of bargaining units of public health employees for both these grantees. AFSCME's opening brief pointed out that the localities theoretically have the option to turn the money down in order to alleviate the Court's concern that an injunction might foist federal money on unwilling recipients. But that unlikely hypothetical refusal does not undermine the common-sense likelihood that the localities will resume their prior behavior in the absence of the Defendants' unlawful roadblock.

As this Court is well aware, Article III standing requires the plaintiff to demonstrate (1) an injury in fact; (2) with a causal connection to the defendant's actions; (3) that will "likely, as opposed to merely speculative[ly]" be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks omitted). Redressability is "virtually always merely the reciprocal of causation," and is separately implicated "only when the court's power to redress an injury caused by an illegal act is independently impaired." *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 658 (D.C. Cir. 2010). "After all, if a government action causes an injury, enjoining the action usually will redress that injury." *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017). "Typically, redressability is absent only when the

Court's decision would have no real effect on the plaintiff's injury." *Cherokee Nation v. U.S. Dep't of Interior*, 643 F. Supp. 3d 90, 106 (D.D.C. 2022) (quotation marks omitted).

When separately implicated, "[c]ausation may . . . be said to focus on whether a particular party is appropriate; redressability, on whether the forum is." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc). The "primary goals" of Article III's redressability requirement "are to ensure that plaintiffs do not sue the wrong parties and that courts do not issue advisory opinions. The redressability requirement should not be misused, however, to prevent the targets of government regulations from challenging regulations that threaten" them. *Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2138 (2025). Accordingly, plaintiffs "need not prove that granting the requested relief is certain to redress their injury, especially where some uncertainty is inevitable." *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 117–18 (D.C. Cir. 1990). Nor must plaintiffs "negate every conceivable impediment to effective relief no matter how speculative." *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 811 (D.C. Cir. 1983) (citing *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 77-78 (1978)). In point of fact, courts regularly vacate agency action that was premised on a misinterpretation of law, even though the agency could thereafter very well "reach the same result for a different reason" through the exercise of its lawful discretion. *FEC v. Akins*, 524 U.S. 11, 25 (1998). In other words, there is no requirement that relief must guarantee redress.

Courts often confront cases in which government action inflicted on a third party has harmed an unregulated plaintiff. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 384-85 (2024) (listing examples). In this "familiar" circumstance, courts can use their "common sense" to determine whether invalidating the government action will "likely (not certainly, but likely) …

5

make a difference" for the plaintiff. *Diamond Alt. Energy*, 145 S. Ct. at 2136-37; *see also Dynalantic Corp. v. Dep't of Defense*, 115 F.3d 1012, 1017-18 (D.C. Cir. 1997).

Moreover, when redress hinges in some measure on the reactions of a third party not before the court, there is no requirement "that plaintiffs introduce evidence … from directly regulated third parties to show how third parties would likely respond to a government regulation or invalidation thereof. Rather, to show redressability, the plaintiff must simply 'show a predictable chain of events' that would likely result from judicial relief and redress the plaintiff's injury." *Diamond Alt. Energy*, 145 S. Ct. at 2139 (quoting *All. for Hippocratic Med.*, 602 U.S. at 385). The plaintiffs in *Diamond Alternative Energy*, gasoline and liquid fuel producers, sued the EPA to compel the agency to rescind its approval of California regulations that required automakers to manufacture more electric vehicles and fewer gasoline-powered vehicles. *Id*. at 2129. The plaintiffs' theory of redressability was that invalidating the regulation of third-party automakers would result in those automakers producing more gasoline-powered vehicles, thereby upping the plaintiff fuel producers' gasoline and liquid fuel sales. *Id*. at 2137. The Court held that the plaintiffs had standing, despite the defendants' argument that redress was speculative because the auto market had evolved to a point where the automakers very well might have continued producing higher numbers of electric vehicles, even in the absence of the regulation. *Id*. The Court expressly rejected the defendants' argument that the plaintiffs were required to produce evidence, such as affidavits, demonstrating that automakers would revert to manufacturing higher levels of gasoline-powered vehicles. *Id*. at 2139. In short, the possibility that regulated third parties, who had chosen not to sue to challenge the regulation, might react in a way that defeated redress did not strip the plaintiffs of standing.

Defendants appear to concede, and this Court has already held, that Defendants' actions caused AFSCME's injury. *See* Defs.' Br. at 4 (citing Mem. Op. at 7). That should be the end of that matter, as it is generally true that where "the defendant's challenged actions are a but for cause of the plaintiff's alleged injury, then that injury generally is likely redressable for standing purposes." *Cherokee Nation*, 643 F. Supp. 3d at 106.

Nonetheless, Defendants argue that this is the rare case where redressability is *not* the reciprocal of causation. First, Defendants argue that Jackson County and Alaska may decline the reinstated funding. And, second, Defendants argue that even with the reinstated funds in hand, the public-employer grantees might opt not to use the money at all, or to use it for expenses other than rehiring terminated AFSCME employees.

As to the first point, it is true that AFSCME's motion highlighted the localities' autonomy to refuse reinstated HHS grant money. AFSCME did so to clarify an apparent mistaken factual premise underlying this Court's preliminary injunction opinion. The Court in its preliminary injunction opinion noted that extending relief to AFSCME "could lead the federal government to pay money to entities that have not asked for it." Mem. Op. at 42. AFSCME's reconsideration motion clarified that, in the unlikely event the localities did not want the reinstated grant money, they could not be forced to take it. But that factual reality does not undermine AFSCME's redressability, for at least two reasons. First, as already explained, it defies common sense to think that localities who had applied for these exact funds, and who had been using them up until their unlawful termination, would more likely than not turn that money away. *Cf. Diamond Alt. Energy*, 145 S. Ct. at 2138 (relying on "commonsense economic inferences" to find redressability).

But second and more fundamentally, denying AFSCME relief because the governmental entities that employ its members opt to forgo litigation is inappropriate as a legal matter, as the Supreme Court underscored just three days after this Court's preliminary injunction decision. The Court observed, in declining to require a plaintiff to produce evidence from regulated third parties to establish standing, that doing so "would [impermissibly] render the plaintiff's ability to obtain judicial review dependent on the happenstance of whether the plaintiff and the relevant regulated parties are aligned and share litigation interests." *Id*. at 2139. Put differently, a plaintiff's standing should not depend on "whether the regulated [third] party is willing to publicly oppose (and possibly antagonize) the government regulator by supporting the plaintiff's suit." *Id*. And once again, common sense dictates that reinstating the cancelled grants will "significant[ly] increase . . . the likelihood that" the localities will resume using the money that they initially requested in the same manner that they previously determined served its best purpose. *Utah v. Evans*, 536 U.S. 452, 464 (2002); *cf. Bennett v. Spear*, 520 U.S. 154, 170-71 (1997) (redress satisfied on logical inference that agency would revert to its previous conduct if intervening agency opinion were set aside, remediating harm to third parties affected by the agency's change of course).

Defendants' motion also overlooks that AFSCME, as the certified exclusive collective bargaining representative of bargaining units of public health employees in both Jackson County and Alaska, has a mature and legal relationship with the localities that employ AFSCME members. *See* Decl. of Megan Peters-Wiseman, ECF No. 14-15, ¶¶ 2, 4-5, 9; Decl. of Heidi Heddings, ECF No. 14-11, ¶¶ 2, 3, 13. Even putting aside the common-sense inferences that can be drawn from these localities' past actions in applying for and accepting federal money, and using it to fill positions in the AFSCME-represented bargaining units, the likelihood of redress

must be viewed in the context of this relationship, in which AFSCME is entitled to further negotiate with the localities about their responsibilities to their employees and their working conditions. *Cf.* Decl. of Amy M. Spiegel, ECF No. 14-13 ¶¶ 8-12 (the union has the ability to access information about, negotiate with the employer over, and typically receives ample advance notice of impending funding cuts and their impact on AFSCME-represented jobs, allowing it to "plan for the future, including—critically—the availability of alternative positions for terminated employees").

Moreover, there is record evidence suggesting the localities value their employees' services and will use the money to retain those employees they unwillingly let go. For instance, the Jackson County Health Department, after being forced to lay off three AFSCME members, opted to "redirect minimal local funds to provide [those members] with two week's pay." Peters-Wiseman Decl. ¶ 8. The Alaska State Department of Health opted to reassign an AFSCME member whose position was destroyed by Defendants' funding cuts rather than permanently terminate her. Heddings Decl. ¶¶ 9-11.  To be sure, Alaska terminated 20 other AFSCME-represented employees. *See* Decl. of Eva Rose Hewitt, ECF No. 14-12, ¶ 8.  But, even there, the employer's initial reaction to the funding cuts expressed a desire to retain the employees. *Id.* ¶ 6. And Washington State, though not implicated in this motion, provides further support for the likelihood that an injunction would redress AFSCME's injuries. When Washington State found out about impending HHS funding cuts, it notified the union that hundreds of employees were at risk of losing their jobs. It lifted those at-risk designations immediately upon the court-ordered reinstatement of its HHS funding. Spiegel Decl. ¶¶ 11-12. Likewise, the Columbus Department of Health, where AFSCME represents public health employees, opted to reallocate internal funding to cover the partial salaries of six staff members that were lost when Defendants

9

cancelled the locality's grants. Decl. of Edward Johnson, ECF No. 14-6, ¶ 21. These localities' prioritization of staff retention makes sense, given the record evidence that funding cut-related layoffs affect the localities' future recruitment potential, Johnson Decl. ¶ 20, and impede mission-critical services for the localities' residents, Peters-Wiseman Decl. ¶¶ 6, 9.

There is thus ample evidence that reinstatement of the cancelled grants to Jackson County and Alaska will significantly increase the likelihood of AFSCME members' reinstatement. *Cf. Autolog Corp. v. Regan*, 731 F.2d 25, 31 (D.C. Cir. 1984) ("[T]hough we do not know to a certainty that the requested relief would ensure future jobs for union members . . . we find such a result highly likely.").

Defendants also argue that the fact that some of the terminated grants either expired after this Court's preliminary injunction order or are imminently scheduled to expire further undermines the likelihood of redress. But extending the preliminary injunctive relief to AFSCME would prohibit Defendants from "giving effect to the March 2025 terminations," Order, ECF No. 32, at 1, and the grant expiration dates can be extended to ensure that Defendants do not give the terminations that effect, as has already been done by HHS with respect to certain grants in connection with the agency's efforts to comply with the existing preliminary injunction. Otherwise, Defendants could manipulate the time that has transpired since their unconstitutional terminations by running down the clock on the grants at issue. The preliminary injunction maintained the status quo, and so it cannot be that the expiration dates cannot be remedied through extension. Moreover, the relatively short amount of time remaining on the awards adds to the logical inference that the localities would simply recall their recently terminated employees. Coming up with a plan for a different use for the money would require additional

time and resources, including time to bargain in good faith with the union as required under state law. Alaska Stat. § 23.40.110(a)(5); Ohio Rev. Code § 4117.11(A)(5).

Defendants' remaining speculation about redressability cannot overcome the evidentiary record. There is, for instance, no indication in the record that the localities would decline money they previously sought and accepted because of "indemnification" concerns. Defs. Br. at 7.

Accordingly, AFSCME has demonstrated standing, including a likelihood that an injunction would redress its injuries.

## II. AFSCME Has Demonstrated Grounds for Reconsideration

Defendants briefly argue that AFSCME failed to demonstrate grounds for reconsideration because (1) there was no factual misunderstanding apparent from the "plain language" of this Court's preliminary injunction opinion, and (2) the Court declined to award AFSCME relief on the independent and additional ground that there is legal "uncertainty over the jurisdictional issues." Defs.' Br. at 11 (quoting Mem. Op. at 42).

1. AFSCME disagrees with Defendants' reading of this Court's opinion. This Court declined to extend injunctive relief to AFSCME for fear that doing so would "override" the localities' decision not to sue to recoup the funds. Mem. Op. at 42. AFSCME's reconsideration motion explained that the localities have the authority to reject the funds, though—as this brief explains—it is highly unlikely they would opt to do so. A preliminary injunction remediating AFSCME's harms would therefore not "force these jurisdictions to accept funds that they do not want to receive." Pls.' Br. at 1.

If Defendants are correct that this Court was concerned only with respecting the localities' decision not to sue, and not concerned with foisting federal money upon unwilling recipients, then we respectfully submit that this Court has wrongly withheld relief based "on the happenstance of whether the plaintiff and the relevant regulated parties are aligned and share

11

litigation interests." *Diamond Alt. Energy,* 145 S. Ct. at 2139. There are any number of reasons why a local government might opt not to sue the federal government, even if the local government would otherwise welcome restoration of the status quo. For instance, it may have diverted scarce resources—a situation only antagonized by Defendants' unlawful actions—to other priorities. Or it may be unwilling "to publicly oppose (and possibly antagonize) the government regulator by supporting the plaintiff's suit." *Id*. But none of those considerations should affect whether AFSCME—a party also harmed by Defendants' actions and properly before this Court—merits relief.

      2. The Court was not uncertain that it had jurisdiction over all of the Plaintiffs' separation of powers and *ultra vires* claims, including those of AFSCME. Instead, the court's uncertainty, which was not unique to the Alaska and Jackson County grants, had to do with "where to draw the jurisdictional line between the APA and the Tucker Act" when it comes to grant terminations generally. Mem. Op. at 31. That uncertainty led the Court to defer ruling on the "plaintiffs' contrary-to-statute and contrary-to-regulation claims under the APA," *id*. at 32, a conclusion that we do not call into question in this reconsideration motion. But the Court's doubts on this score did not preclude it from finding of likelihood of success on Plaintiffs' separation of powers and *ultra vires* claims as to grants under the CPRSAA, CARES Act, and CRRSAA. *Id*. at 12, 16-20. Jurisdictional uncertainty also informed the Court's decision not to grant the Plaintiffs nationwide relief, which this motion likewise does not seek to revisit. *Id*. at 41.

      As to AFSCME specifically, the Court's jurisdictional uncertainty relating to the APA claims amplified its hesitation to override the localities' decision to forgo litigation to recoup the disputed funds. Mem. Op. at 42. This motion attempts to overcome that hesitation, which is the

only consideration unique to AFSCME that the Court discussed in its consideration of the equities informing the scope of relief.

## CONCLUSION

For these reasons, and for the reasons set forth in AFSCME's opening brief, AFSCME respectfully requests that the Court reconsider the denial of injunctive relief with respect to AFSCME members who are public employees in Alaska and Jackson County, Ohio.

Dated: August 8, 2025

Respectfully submitted,

  /s Joel McElvain
JOEL McELVAIN
POOJA BOISTURE*
SKYE L. PERRYMAN
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
jmcelvain@democracyforward.org
pboisture@democracyforward.org
sperryman@democracyforward.org

MATTHEW BLUMIN
GEORGINA YEOMANS
1625 L Street, N.W.
Washington, D.C. 20036
(202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org
GYeomans@afscme.org

*Counsel for AFSCME*

*Admitted pro hac vice*