# EXHIBIT B

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES

Public Health Service

Centers for Disease Control
and Prevention (CDC)
Atlanta GA 30329-4027

September 19, 2025

Imelda Garcia, MPH
Chief Deputy Commissioner
Texas Department of State Health Services
PO Box 149347
Austin, TX 78714-9347

RE: CDC Awards: NH23IP922616 and NU50CK000501

Dear Ms. Garcia,

      Thank you for your communication related to funds which the Centers for Disease Control and Prevention (CDC) restored to the Texas Department of State Health Services (Texas or DSHS) on the above-two referenced awards/cooperative agreements. As stated in your letter, this restoration was ordered by the U.S District Court in a case brought by Harris County, a named plaintiff. The funds were made available to Texas on or about July 29, 2025. And as you confirmed in your letter, the funds made available to Texas, $12,668,625.19 and $966,567.71, respectively, represent the exact amounts remaining on Texas's contracts with Harris County, when (following CDC's termination of its grants to Texas), Texas terminated those contracts.

      Your letter "requests that CDC contract directly with Harris County in order to comply with the court order." These funds ($12,668,625.19 and $966,567.71) were restored to Texas (rather than Harris County) because your organization applied for and was the prime recipient of these funds. CDC does not have a direct relationship with Harris County on either subject award. As such, with respect to the subject awards, we did not terminate any contract with or award to Harris County.

      Your letter continues, "[i]f CDC is requesting that DSHS assist CDC in compliance with the court order by passing through these funds, DSHS requests that HHS acknowledge the costs that DSHS will necessarily incur in meeting its requirements as a passthrough entity . . . and adjust the amount of the funds made available . . . ." CDC does not have authority to provide Texas with additional funding—beyond the $12,668,625.19 and $966,567.71, respectively, which CDC already provided to Texas. Additionally, Texas already received indirect costs with respect to the subject awards, through the negotiated indirect cost agreement, as explained below.

      Because Texas is a direct recipient of funds from CDC, 45 CFR 75.414, the regulation in place at the time the subject awards were issued, requires CDC to accept Texas's Federally negotiated indirect cost rate. In reviewing the history for the two referenced awards, CDC approved indirect costs on all funds awarded to Texas based on the current approved indirect cost rate agreement. Based on the

agreement in place at the time of the awards, Texas already received indirect costs of approximately 37.6% of the modified total direct costs, including up to the first $25,000 of any flow-through funds.

The funds CDC recently awarded to Texas are not new funds but restoration of previously awarded and then terminated COVID funds. CDC already approved the indirect costs associated with these funds when initially awarded. And when CDC terminated and de-obligated the COVID funds, CDC did not recover any of the indirect costs from Texas. So those funds would have remained available to Texas to cover its indirect costs.

Notwithstanding our stated view that this is a restoration of previously-awarded and previously-terminated funds, CDC is amenable—in light of the request in your letter, and given the specific circumstances here—to treating these restored funds as new awards, for purposes of applying Texas's indirect cost rates, if Texas requests such treatment, and Harris County agrees, subject to the terms of this response letter.

In that case, if the recently restored funds are treated as new awards, Texas would be entitled to apply its indirect cost rates in sub-awarding these funds to Harris County under the negotiated indirect cost rate agreement (State and Local Government Rate Agreement with Texas dated September 21, 2023). This arrangement is available (i) only if Texas's subawards to Harris County adhere to the original purpose of the subawards (*i.e.,* the purpose of the subawards prior to termination on or around March 2025), and (ii) only to the extent Texas's indirect costs (for which it seeks reimbursement) align with the project and work that Texas may execute through the subawards to Harris County. Also, nothing in this response letter changes the period of performance set forth in the Notice of Award, dated July 25, 2025, for each of the two above-referenced CDC awards.

If DSHS would like to utilize this arrangement, and Harris County agrees, please provide a reply to this letter confirming that DSHS will comply with the terms of this response letter and that Harris County has agreed to this arrangement.


Sincerely,


Jamie Legier
Chief Grants Management Officer
Office of Grant Services