**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HARRIS COUNTY, TEXAS,** *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>**ROBERT F. KENNEDY, JR.**, in his official capacity as Secretary of the United States Department of Health and Human Services, *et al.*<br><br>        Defendants. | Case No. 25-cv-1275 (CRC) |

## <u>ORDER</u>

In this case challenging the wholesale termination of COVID-19-era public health grants to state and local governments, the Court previously granted in part and denied in part the plaintiffs' motion for a preliminary injunction ("PI").[1]  In the Memorandum Opinion accompanying the PI order, the Court clarified that it would order preliminary relief as to the local government plaintiffs, but would not go so far as to order nationwide preliminary relief on the basis that the union plaintiff—the American Federation of State, County, and Municipal Employees ("AFSCME" or "the union")—had members in jurisdictions across the country who were harmed by the grant terminations.  Memorandum Opinion ("Mem. Op.") at 40–42.  The Court further ruled that preliminary relief would not cover AFSCME members in Alaska or Jackson County, Ohio, notwithstanding that the union had submitted declarations discussing the impacts of funding cuts in those particular jurisdictions.  Id. at 41–42.

---

[1] The Court assumes familiarity with its prior ruling for the purposes of this Order.

AFSCME has moved for partial reconsideration of the Court's Memorandum Opinion and Order under Federal Rule of Civil Procedure 59(e).  See generally AFSCME's Mot. for Partial Recons. ("Mot. for Part. Recons.").  Specifically, the union argues that the Court's decision not to order preliminary relief based on the harm to AFSCME members in Alaska and Jackson County rested on a misunderstanding of how the grants at issue are disbursed and worked a manifest injustice on the members in those locations.

Under Rule 59(e), a party may move to "alter or amend a judgment" within 28 days after its entry.  Motions for reconsideration are generally "disfavored and as such are granted only in extraordinary circumstances."  EB5 Holdings, Inc. v. Jaddou, 751 F. Supp. 3d 1, 3 (D.D.C. 2024).  Moreover, Rule 59(e) does not permit parties to relitigate arguments that have already been raised or present new arguments that could have been raised earlier; in short, it does not give parties a second bite at the apple.  See id.

Ultimately, a Rule 59(e) motion for reconsideration is "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (cleaned up).  AFSCME rests its motion on the third ground.  The Court will exercise its discretion to **DENY** AFSCME's motion for partial reconsideration because it has failed to identify either a "clear error" or "manifest injustice" in the PI decision.

*First*, the Court has not made the "clear error" that the union insists it has.  As explained in the Court's Memorandum Opinion, the PI order did not cover Alaska or Jackson County because "[n]either jurisdiction sued to recoup these funds, a decision that their elected officials were entitled to make for themselves and their constituents," and the Court was especially

2

disinclined to "override that decision lightly . . . given the uncertainty over the jurisdictional issues" created by the Tucker Act.  Mem. Op. at 42.  The Court further elaborated that "neither the APA nor the equities require the extraordinary remedy of a hastily issued order that could lead the federal government to pay money to entities that have not asked for it."  Id.

The Court's explanation did not reflect a factual misunderstanding about how the grants at issue are paid out, nor did it convey a concern that "injunctive relief on behalf of affected AFSCME members would *force* the employer jurisdictions to accept funds that they do not want to receive."  AFSCME's Reply in Supp. of Its Mot. for Partial Recons. ("Mot. for Part. Recons. Reply Br.") at 2 (emphasis added).  After all, just a few pages prior, the Court expressly acknowledged that the grants "work on a reimbursement model, so plaintiffs would draw from them as they incur expenses."  Mem. Op. at 40.  Instead, as the government correctly observes, the Court was (1) "respecting the deliberate decision" of the local governments "not to join this lawsuit," Opp. to AFSCME's Mot. for Partial Recons. ("Opp. to Part. Mot. for Recons.") at 11, and (2) looking to minimize the chance of potentially erroneous and irretrievable government payments, in light of unsettled questions as to Tucker Act jurisdiction over the parties' claims.[2] Cf. Kim v. FINRA, 698 F. Supp. 3d 147, 160–61 (D.D.C. 2023) ("Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." (quoting Trump v. Int'l Refugee Assistance Proj., 582 U.S. 571, 579 (2017)).

The union submits that if the Court did not misunderstand the reimbursement model, it nevertheless "wrongly withheld relief based 'on the happenstance of whether the plaintiff and the

---

[2] Of course, doctrinal uncertainty about Tucker Act jurisdiction continues to linger and is one of the reasons the Court stayed dispositive motion briefing in this case pending the outcome in Climate United Fund v. Citibank, D.C. Cir. No. 25-5122.  See ECF No. 62.

relevant regulated parties are aligned and share litigation interests.'" Mot. for Part. Recons. Reply Br. at 11–12 (quoting Diamond Alt. Energy, LLC v. EPA, 606 U.S. 100, 121 (2025)). The Supreme Court's decision in Diamond Alt. Energy was handed down a few days after this Court's PI decision, and it counsels lower courts that plaintiffs challenging a government regulation need not "introduce evidence from . . . directly regulated third parties to show how third parties would likely respond to a government regulation or invalidation thereof" in order to establish Article III standing. 606 U.S. at 120–21. Said another way, the opinion warns against overreading a regulated party's decision not to "support[]" other plaintiffs in challenging a particular government action, as it could very well be that the regulated party and plaintiff do not "share litigation interests" or that "the regulated party is [not] willing to publicly oppose (and possibly antagonize) the government regulator by supporting the plaintiff's suit." Id. at 121.

Incidentally, Diamond Alt. Energy shores up AFSCME's Article III standing and undercuts the government's drive-by assertion that, in acknowledging the possibility that Alaska and Jackson County could decline funds from the federal government, AFSCME "expose[d] a critical defect" in the redressability of its constitutional injury, Opp. to Part. Mot. for Recons. at 1, and in effect "ple[d] itself out of redress by relying on hypothetical actions . . . beyond the control of AFSCME or the Court," id. at 3.[3] As AFSCME points out, "to show redressability, the plaintiff must simply 'show a predictable chain of events' that would likely result from judicial relief and redress the plaintiff's injury." Diamond Alt. Energy, 606 U.S. at 121 (quoting Alliance for Hippocratic Medicine, 602 U.S. 367, 385 (2024)). "Commonsense economic inferences" may "make it sufficiently predictable" that "invalidating" government action would

---

[3] The Court notes that the government has not formally moved for reconsideration of the PI decision as to AFSCME's Article III standing.

"likely redress" an indirect beneficiary's injury.  Id. at 120 (cleaned up).  At least on the PI record, it would have been entirely reasonable to infer that jurisdictions like Alaska and Jackson County would resume use of the public health grants in the same manner they had been using them until the wholesale termination, including to employ AFSCME members given the union's position as the certified exclusive representative of the bargaining units of public health employees in both jurisdictions.  See generally Mot. for Part. Recons. Reply Br. at 8–10. Although AFSCME's Motion for Partial Reconsideration clarified that these governments would not be obligated against their will to accept funds they no longer wanted, it did nothing to undermine the "predictable chain of events" that supports Article III standing at this preliminary stage:  The vacatur of the blanket termination decision and return to the *status quo ante* seem likely to lead to the resumed operation of cancelled grants and the rehiring of AFSCME members to do the work they were doing before the grants were rescinded.

The problem for the union's request for reconsideration is that Diamond Alt. Energy concerns Article III standing, not the delicate case-by-case balancing of equities that happens at the PI stage.  The Supreme Court's decision expressed concern that increasing a plaintiff's burden in proving redressability—say, by requiring the collection of affidavits from regulated parties directly impacted by challenged government conduct—"would ultimately close the courthouse doors to many traditional challenges to agency action."  606 U.S. at 121.  But it did not hold that a plaintiff who is indirectly harmed by government conduct is automatically entitled to preliminary relief.  Such relief remains, ultimately, "a matter of equitable discretion" and does not necessarily follow from a plaintiff's showing of likelihood of success on the merits or irreparable injury.  Kim, 698 F. Supp. 3d at 172 (quoting Benisek v. Lamone, 585 U.S. 155, 158 (2018)).

On the record available at the PI stage, the Court was persuaded that preliminary relief was appropriate for those local governments who had joined the lawsuit to ask for it.  It was less persuaded that the harm inflicted on a large class of AFSCME members, as opposed to specific government grant recipients, offset the risk of a potentially erroneous ruling that would compel the government to outlay large sums of money, especially to jurisdictions that had not asked for it specifically.  See Mem. Op. at 38–41.

To be sure, AFSCME "does not ask this Court to revisit its preliminary conclusion that nationwide relief is not warranted, and requests only relief narrowly targeted to two jurisdictions."  Mot. for Part. Recons. at 6.  But were the Court to rethink the balance of equities it previously struck as to those two jurisdictions, the line-drawing exercise would get more complicated.  There are presumably many more states and municipalities that employ (or used to employ) allegedly harmed AFSCME members and are not covered by another district court PI.  See Mem. Op. at 37–38, 40–41.  Other than the fact that AFSCME happened to put declarations from certain union members before the Court, it is not entirely clear what distinguishes members in Alaska and Jackson County from those in other jurisdictions.  If the Court were to order preliminary relief only as to these two governments, that would seem to create inconsistencies in preliminary relief afforded to similarly-situated union members.  And resolving such inconsistencies may in turn lead the Court back to the quandary it faced last summer—*i.e.*, how to balance the serious injury incurred by union members against the serious injury incurred by the government, if the Court's analysis of debatable jurisdictional issues turned out to be incorrect.  See Mem. Op. at 40–41.  In its "equitable discretion," the Court drew the PI line at local government plaintiffs, whose precise injuries are distinct in kind and scope to those of

AFSCME's affiants—and is loath to redraw the line now given the other inconsistencies and equitable problems such redrawing could create.

*Second*, AFSCME asks the Court to reconsider its prior ruling because of the claimed manifest injustice that it works on AFSCME members in Alaska and Jackson County. The Court previously concluded that AFSCME "face[d] irreparable harm because its declarations confirm that many AFSCME employees have already lost their jobs, with hundreds more at risk of job loss due to the termination of federal funding to state and local governments." Mem. Op. at 37. That injury was intensified because members "who lose their jobs due to federal-funding cuts likely cannot sue the federal government to recover backpay or any other remedies," as they work for state and local governments, and "any suit against the federal government for backpay or other damages would likely be barred by sovereign immunity." Id. at 38.

The Court stands by its irreparable harm ruling and recognizes the injuries suffered by AFSCME members due to the government's allegedly unlawful action. But again, preliminary relief does not necessarily flow from a successful showing of irreparable harm. Kim, 698 F. Supp. 3d at 172. Nor does a showing of irreparable harm automatically demonstrate a "manifest injustice" for Rule 59(e) purposes, which would subvert the carefully laid out standard for preliminary relief. Ultimately, "a manifest injustice does not result merely because a harm may go unremedied," but instead represents something more extreme—for instance, "a result that is fundamentally unfair in light of governing law." Slate v. ABC, Inc., 12 F. Supp. 3d 30, 35–36 (D.D.C. 2013). AFSCME has not explained how this stringent standard is satisfied here.

In closing, the Court emphasizes that the PI order may not be its final word on injunctive relief aimed at rectifying the injuries of the union and its members. As the Court previously observed, "[s]hould [it] eventually hold the blanket grant rescissions unlawful, then the

appropriate course may well be for the Court to vacate those rescissions as to all grant recipients."  Mem. Op. at 42.  And based on the causal chain that AFSCME has laid out, such a vacatur would seem to "significantly increase the likelihood of [union] members' reinstatement." Mot. for Recons. Reply Br. at 10.

At this juncture, the Court will not opine on the government's suggestion that the grants may have "natural[ly] expir[ed]" by that hypothetical point.  See Opp. Br. at 6; id. at 6 n.5. Suffice it to say that, among other things, the plaintiffs have asked the Court to "reinstate" the grants "for the awarded project periods and to continue to administer the grants to the same extent and in the same manner as prior to the unlawful terminations[.]"  Compl. at 53.  If the plaintiffs eventually prevail on one or more of their claims, it is far from clear that the happenstance expiration of original grant deadlines would preclude the Court from granting the relief that plaintiffs seek.

In any case, the Court concludes that AFSCME has not carried its hefty burden of demonstrating that reconsideration is warranted. For the foregoing reasons, it is hereby

**ORDERED** that AFSCME's [38] Partial Motion for Reconsideration is **DENIED**.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date:  March 19, 2026

8